***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARAH RAYNOR, : | |
| : | |
| Plaintiff, : | |
| : | Civ. Action No. 15-5914 (FLW) (DEA) |
| v. : | |
| : | |
| VERIZON WIRELESS (VAW), LLC, : | **OPINION** |
| D/B/A VERIZON WIRELESS, : | |
| : | |
| Defendant. : | |

**WOLFSON, District Judge**:

Plaintiff Sarah Raynor (hereinafter, "Plaintiff") filed this action against her cell phone carrier, Defendant Verizon Wireless (hereinafter, "Defendant" or "VZW"), asserting violations of the Telephone Consumer Protection Act (hereinafter, "TCPA"), 42 U.S.C. § 227 *et seq*. In lieu of an answer, Defendant moves to dismiss the complaint and compel arbitration. In its motion, Defendant argues that Plaintiff is bound by the arbitration clause in the Customer Agreement and the VZW Customer Agreement (hereinafter, the "VZW Agreement"), which is valid and enforceable to arbitrate her TCPA claim. For the reasons set forth below, the Court finds that a valid arbitration agreement between the parties exists, and that Plaintiff's TCPA claim falls within the ambit of the arbitration clause. Defendant's motion is **GRANTED**.

1. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a customer of VZW, a nationwide provider of wireless telephone services. On June 3, 2015, Plaintiff opened a single account with VZW, identified as Account No. XXXXXX0478 (hereinafter, the "Account") at a VZW retail store in New Jersey. Supplemental Deceleration of Avram Polinsky (dated Oct. 28, 2015) (hereinafter, "Supp. Polinsky Decl."),

¶¶ 4-5, Exs. F-G. [1] On that day, Plaintiff activated wireless services on the Account for two telephone numbers (hereinafter, "MTNs"). Supp. Polinsky Decl., ¶¶ 4-5, Exs. F-G. The first mobile telephone number that VZW assigned Plaintiff was XXX-XXX-3651 (hereinafter, the "Subject MTN"). Supp. Polinsky Decl., ¶ 2, Ex. D. The Subject MTN was then activated by Plaintiff at 7:37 pm, and a Customer Agreement for that MTN was generated contemporaneously, but Plaintiff did not sign the Agreement. Supp. Polinsky Decl., ¶ 2, Ex. D. Six minutes later, at 7:43 pm, Plaintiff activated another mobile telephone number, XXX-XXX-4170, which was assigned as an additional line of service on the same Account. Supp. Polinsky Decl., ¶ 3, Ex. E. An identical Customer Agreement, relating to the second MTN, was generated in connection with Plaintiff's Account, which Plaintiff signed as the "Account Owner." Supp. Polinsky Decl., ¶ 3, Ex. E. To date, Plaintiff's Account and the Subject MTN are still active.

Both the signed and unsigned, 3-page Customer Agreements contain arbitration clauses written in bold and capital text located directly above the Customer Agreement's signature line; the clauses state: "**I UNDERSTAND THAT I AM AGREEING TO** . . . **SETTLEMENT OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS**. . . ." Supp. Polinsky Decl., ¶¶ 2-3, Exs. D-E. Each of the Customer Agreements reference and incorporate a VZW Agreement, which identifies the terms and conditions of service governing Plaintiff's Account. Supp. Polinsky Decl. ¶¶ 3-4, Exs. E-F. In addition, from June 2015 to October 2015, VZW mailed Plaintiff approximately 9 separate letters that either included the VZW Agreement, or

---

[1] Since Defendant mounts a factual challenge to this Court's subject matter jurisdiction, I may consider factual matters and extrinsic materials, such as affidavits and other evidence that are not referenced in Plaintiff's Complaint. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *United States, ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("When, as here, defendant challenges the existence of subject matter jurisdiction in fact . . .the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings. . . .").

referred Plaintiff to VZW's website, where the VZW Agreement is available for viewing. Supp. Polinsky Decl. ¶¶ 5-13, Exs. G-O.

The first page of the VZW Agreement identifies various methods for the acceptance of its terms and conditions:

> **HOW DO I ACCEPT THIS AGREEMENT?**
>
> You accept this agreement by:
>
> Agreeing in writing, by email, over the phone, or in person;
>
> Opening a package that says you are accepting by opening it; or
>
> Activating your service
>
>  . . .
>
> By accepting, you are agreeing to every provision of this Agreement whether or not you have read it. **If you do accept, you can cancel a line of Service within 14 days of accepting this Agreement without having to pay an early termination fee as long as you return, within the applicable return period, any equipment you purchased from us or one of our authorized agents. . . .**

Declaration of Avram Polinsky (dated Sept. 16, 2015) (hereinafter, "Polinsky Dec."), ¶ 6, Ex. C. The VZW Agreement also contains an arbitration clause that is written in bold and capital letters, outlined in a black box, and separated from the rest of its text. Specifically, under the heading "**HOW DO I RESOLVE DISPUTES WITH VERISON WIRELESS?**", the VZW's arbitration clause provides in pertinent part:

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD.**

> . . .
>
> **WE ALSO BOTH AGREE THAT:** (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). . . .

Polinsky Dec., ¶ 6, Ex. C. (emphasis in original).

Notwithstanding these aforementioned provisions, Plaintiff filed the instant one-count Complaint. Plaintiff alleges that Defendant violated the TCPA by continuously telephoning her, regarding delinquent cell phone payments, through the use of an automatic dialing system without obtaining her prior express consent. Compl. ¶ 13-17. In the present matter, Defendant moves to dismiss the complaint and compel arbitration, arguing that Plaintiff has agreed to arbitrate her TCPA claim. However, in an attempt to circumvent the Customer and VZW Agreements' arbitration clauses, Plaintiff argues, *inter alia*, that "Defendant has failed to meet its evidentiary burden to prove the existence of an enforceable arbitration agreement." And, Plaintiff further argues that, even if the arbitration Agreements are enforceable, her TCPA claim falls outside the scope of the arbitration clause.

## II.     STANDARD OF REVIEW

The Federal Arbitration Act's ("FAA") purpose is "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172 (3d Cir. 2010) (quoting

4

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). To achieve this end, the FAA provides that contract provisions that contain arbitration clauses "shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." 9 U.S.C. §§ 2, 3, 4. Collectively, those provisions of the FAA manifest "'liberal federal policy favoring arbitration agreements.'" *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 493 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Therefore, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .'" *Maddy v. GE*, 629 F. App'x 437 (3d Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

When a district court is presented with a motion to compel arbitration, it must answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009). When performing this inquiry, the court applies "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009).

**III.   ANALYSIS**

    **A.   The Customer and VZW Agreements' Arbitration Clauses are Valid**

Plaintiff disputes the validity of the arbitration clause in question, arguing that "Defendant has failed to present sufficient evidence that Plaintiff knowingly agreed to arbitration" because "the [Customer Agreement] that is unsigned relates to the telephone number in question in this matter, XXX-XXX-3651." Plaintiff reasons that "Defendant provides no

documentation showing Plaintiff's knowing written acceptance of the terms and conditions of the Customer Agreement as it pertains to the number ending in 3651." The Court, however, finds that this argument is without merit.

New Jersey case law provides that "[a] contract arises from an offer and acceptance, and must be sufficiently definite "that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Therefore, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Id*. However, "where the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable." *Id*. Furthermore, courts in New Jersey have held that, in order to find a manifestation of consent, "[i]t is requisite that there be an unqualified acceptance. . . ." *Id*. An offeree's manifestation of consent may be expressed "through words, creating an express contract, or by conduct, creating a contract implied-in-fact." *Id*. at 436. (citing *Restatement (Second) of Contracts* § 19(1) (1981)).

In the instant matter, the Court finds that Plaintiff affirmatively accepted all of the terms of the Customer and VZW Agreements, including their mandatory arbitration provisions, by signing one of the Customer Agreements when she opened her VZW Account. To begin, the Customer Agreements that were given to Plaintiff on June 3, 2015 are identical, and they each contain the following arbitration clause, in bold and capital letters: "**I UNDERSTAND THAT I AM AGREEING TO** . . . **SETTLEMENT OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS**. . . ." Supp. Polinsky Decl., ¶ 2-3, Exs. D-E. Furthermore, both Customer Agreements identify Plaintiff as the "Customer," the "Primary User," and, more importantly, the sole "Account Owner." Supp. Polinsky Decl., ¶ 2-3, Exs. D-E. The Customer Agreements also contain the same billing address and billing account number ending in 0478, and Plaintiff

6

received a single monthly bill for the use of both wireless numbers. Supp. Polinsky Decl., ¶ 2-3, Exs. D-E. Accordingly, the terms and conditions of the Customer Agreements that were generated when Plaintiff activated each of her telephone lines do not pertain to Plaintiff's individual MTNs; rather, they, collectively, define the contractual terms for the single wireless account that Plaintiff obtained from VZW. Tellingly, the initial Customer Agreement indicated that Plaintiff was activating a "[n]ew" line, while the subsequent Customer Agreement indicated that Plaintiff was "[a]dd[ing]" another line under the same account, instead of creating an additional unrelated wireless number. Supp. Polinsky Decl., ¶ 2-3, Exs. D-E. Therefore, since both telephone numbers are assigned to the same Account, Plaintiff's signing of one of the Customer Agreements as the "[a]ccount [o]wner" sufficiently expresses Plaintiff's willingness to be bound by the Customer Agreement's terms and conditions as they relate to her Account. Supp. Polinsky Decl., ¶ 3, Ex. E. It follows that because Plaintiff agreed to those terms, she provided her assent to arbitrate.

However, even if Plaintiff's signature on one Customer Agreements does not bind her to the Agreement related to the Subject MTN, the Court finds that Plaintiff, nevertheless, agreed to the Customer and VZW Agreements by activating her cell phone service. In bold and capital text, immediately above the signature line, the Customer Agreements clearly and unambiguously identify, and incorporate by reference, the VZW Agreement.[2]

---

[2] While Plaintiff does not raise this point, the Court notes that Plaintiff agreed to the terms and conditions of the VZW Agreement, even if she did not read it, because the Customer Agreement clearly identified and incorporated the VZW Agreement. Indeed, the Customer Agreement was merely 3 pages in length, and it referred Plaintiff to the "Verizon Wireless Customer Agreement," a 10-page contract that unambiguously states, *inter alia*, that "any disputes" between Plaintiff and VZW must be resolved through arbitration. *See Std. Bent Glass Corp.*, 333 F.3d at 447 n.10 (noting that, so long as a duly incorporated document is clearly identified in the original agreement, "a party's failure to read [the] duly incorporated document

7

> **I AGREE TO THE CURRENT *VERIZON WIRELESS CUSTOMER AGREEMENT* . . . INCLUDING THE TERMS AND CONDITIONS OF MY PLAN AND ANY OPTIONAL SERVICES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE SERVICE SUMMARY, ALL OF WHICH I HAVE HAD THE OPPURTUNITY TO REVIEW . . . I AM AWARE THAT I CAN VIEW THE CUSTOMER AGREEMENT ANYTIME AT VERIZONWIRELESS.COM OR IN MY VERIZON ACCOUNT.**

Supp. Polinsky Decl., ¶¶ 2-3, Exs. D-E (italics added); *Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) (concluding that it is permissible for an offeror to "include documents or provisions incorporated by reference into the main agreement); *see also* 11 Richard A. Lord, *Williston on Contracts* § 30.25 (4th ed. 1999) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document . . . including a separate document which is unsigned.").

Additionally, the VZW Agreement contains an arbitration clause, and it indicates various methods for accepting its terms and conditions. On the first page of the VZW Agreement, under the heading "**HOW DO I ACCEPT THIS AGREEMENT?**", the following methods of acceptance are identified:

> You accept this agreement by:
>
> Agreeing in writing, by email, over the phone, or in person;
>
> Opening a package that says you are accepting by opening it; or
>
> *Activating your Service*.

---

will not excuse the obligation to be bound by its terms") (internal citations and quotations omitted).

Polinsky Dec., ¶ 6, Ex. C (italics added). Therefore, Plaintiff need not sign the Customer Agreement to be bound by it, because the VZW Agreement provided alternative methods for the acceptance of its terms and conditions. Significantly, there is no dispute that Plaintiff activated service for the Subject MTN, which she continues to use. Supp. Polinsky Decl., ¶ 4, Ex. F. In doing so, Plaintiff bound herself to the arbitration clauses contained in the Customer and VZW Agreements, as she signified her acceptance to their terms and conditions through her conduct. *See Curtis v. Cellco P'ship*, 413 N.J. Super. 26, 32 (App. Div. 2010) (finding that the "[p]laintiff's acceptance of the[] terms [in the VZW Agreement] was confirmed by his . . . activation and use of the wireless phone service plan").[3] Accordingly, I find that there is an enforceable arbitration agreement between Plaintiff and VZW.

### B.     Plaintiff's TCPA Claim Falls Within the Scope of VZW's Arbitration Clause

Plaintiff contends that even if a valid agreement between the parties exists, her TCPA claim does not fall within the scope of the arbitration agreement because the factual allegations that form the basis of the claims do not pertain to the contract.[4] The Court rejects this argument.

In determining whether Plaintiff's TCPA claim falls within the ambit of VZW's arbitration clause, any "doubts about the scope of [the parties] arbitration agreement [must be resolved] in favor of arbitration." *Medtronic AVE Inc. v. Advanced Cardiovascular Sys.*, 247

---

[3] VZW also contends that Plaintiff is equitably estopped from circumventing the arbitration clause because "Plaintiff 'knowingly exploited' the agreement and derived a 'direct benefit' from it." Def's Support Brief at 8. However, the Court need not address this issue as it has already found that Plaintiff consented to the terms and conditions of the Customer and VZW Agreements through her signature and the activation of her cell phone service.

[4] In a conclusory fashion, Plaintiff also contends that, even if the arbitration clause is valid, "such clause is unconscionable and therefore unenforceable." Pl's Brief at 6. However, this assertion is without merit; in fact, Plaintiff devotes very little in her opposition papers in support of this position. Nonetheless, the Court notes that Plaintiff's unconscionability argument is foreclosed by the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

F.3d 44, 55 (3d Cir. 2001). Furthermore, broadly drafted arbitration agreements are entitled to a "presumption of arbitrability." *Century Indem. Co.*, 584 F.3d at 556. And, "[c]ourts have generally read the terms 'arising out of' or 'relating to' a contract [, both of which are included in the VZW Agreement's arbitration clause,] as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in *any* way to the contract." (internal citations omitted) (emphasis added). *Curtis*, 413 N.J. Super. at 26. Therefore, the dispute between Plaintiff and VZW will not fall outside the scope of VZW's arbitration clause "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). Indeed, "[i]n such cases, [in] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (internal citations and quotations omitted).

The VZW Agreement's arbitration clause is clearly entitled to the presumption of arbitrability, because it is broadly drafted:

> . . . ANY DISPUTE THAT <u>IN ANY WAY RELATES TO OR ARISES OUT OF</u> THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OF SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). . . .

Polinsky Dec., ¶ 6, Ex. C. (emphasis added). Here, Plaintiff's TCPA claim is premised on the allegation that Defendant violated the statute by telephoning her with regard to a delinquent VZW phone bill without her prior authorization. In that regard, Plaintiff attempts to rebut the presumption of arbitrability by contending that this suit concerns Defendant's "harassing

10

telephone calls as defined by federal law," which, Plaintiff argues, is not covered by the arbitration agreement.[5] Pl's Brief at 7-8. The language of the VZW Agreement, however, indicates otherwise. The VZW Agreement requires VZW to provide wireless services to Plaintiff, and, in return, Plaintiff pays certain fees for those services. Indeed, the schedule of fees was set forth in the Customer Agreements. In addition, under the heading "**MY SERVICE**," the VZW Agreement states: "[y]our [p]lan includes your monthly allowances and features . . ., and their monthly and pay-per use charges." The VZW Agreement also specifies the consequences of a customer's "fail[ure] to pay on time . . .," including VZW's methods of debt collection. Polinsky Dec. ¶ 6, Ex. C. Although Plaintiff argues that the arbitration clause does not encompass the dispute at hand, the Court finds that the facts underlying the TCPA claim "relate[] to" and "arise[] out of" the subject matter that the VZW Agreement contemplates—that is, Plaintiff's use of VZW's services and her inability to make timely payments. In other words, although the current suit concerns Defendant's alleged debt collection practices, Defendant's attempts to contact Plaintiff arose out of Plaintiff's use of VZW's services and the outstanding payments on her bills, which Plaintiff was contractually obligated to make. Therefore, Plaintiff's TCPA claim falls within the ambit of a ". . . dispute that in any way relates to or arises out of this agreement or from any . . . services [she] receive[s] from [VZW]," as defined by the scope of the arbitration clause. Polinsky Dec., ¶ 6, Ex. C. *See, e.g.*, *Cayanan v. Citi Holdings, Inc.*, 928 F.

---

[5] In further support of this point, Plaintiff cites to *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995), a non-binding case. Although the court, there, found that the arbitration clause in question did not encompass the plaintiff's claim of defamation, the court also acknowledged that "the defamatory statement . . . allegedly contained a number of charges extending beyond core issues" contained in the parties' contract. In contrast, here, the Court finds that Plaintiff's TCPA claim, which challenges Defendant's debt collection practices, relate to a subject matter contained in the parties contract: Plaintiff's contractual obligation to pay for Defendant's wireless services and Defendant's collection methods. *See*, *infra.*

Supp. 2d 1182, 1207 (S.D. Cal. 2013) (finding a TCPA claim arbitrable); *Owings v. T-Mobile USA*, Inc., 978 F. Supp. 2d 1215, 1225 (M.D. Fla. 2013) (same); *Conway ex rel. Conway v. Done Rite Recovery Servs.*, No. 14-5182, 2015 U.S. Dist. LEXIS 56980, at*14 (N.D. Ill. Apr. 30, 2015); *Weingarten v. Colony Brands, Inc.*, No. 12-1079, 2013 U.S. Dist. LEXIS 118492, at *4 (D. Conn. Aug. 21, 2013) (determining that plaintiffs TCPA claim fell within scope of arbitration clause); *Sherrod v. Time Warner Cable, Inc.*, No. 14-1471, 2014 U.S. Dist. LEXIS 163393 (S.D.N.Y. Nov. 21, 2014).

## IV. DISMISSAL OF THE PROCEEDINGS

Upon an order compelling arbitration, Defendant asks the Court to dismiss the action, and Plaintiff has not requested a stay pending arbitration. The Third Circuit has held that the plain language of Section 3 of the FAA "affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004). Because neither party requests a stay of the proceedings, the Court dismisses the case in favor of arbitration.

Dated: April 25, 2016

/s/     Freda L. Wolfson
Freda L. Wolfson
United States District Judge